IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                              No. CR 23-0481 JB

LORENZO ESCUDERO,

       Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on the Defendant's Objections to the Presentence Report, filed June 27, 2023 (Doc. 10)("Objections"). In the Objections, Defendant Lorenzo Escudero objects to the Presentence Investigation Report, filed June 13, 2023 (Doc. 8)("PSR"). The primary issue[1] is whether the PSR appropriately delimits the scope of the underlying offense's relevant conduct under § 1B1.3 of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").[2] <u>See</u> Objections at 11-14. The Court concludes that Escudero's sale of stolen firearms is relevant conduct under § 1B1.3(a)(2), and overrules his Objections based on the

---

[1]On July 10, 2023, in response to Escudero's Objections, the USPO filed: (i) an Addendum to the Presentence Report (Doc. 14)("Addendum"); (ii) a Memorandum (Doc. 15); and (iii) a Revised Presentence Investigation Report (Doc. 16)("Revised PSR"). To the extent that the changes which the USPO makes to the PSR resolve Escudero's Objections, the Court will not rule on those Objections.

[2]Escudero also raises two other Objections. First, he raises the issue whether the base offense level for his offense of conviction is "excessive in this case." Objections at 3. For reasons which the Court explains below, and because the Revised PSR addresses this Objection, <u>see</u> Memorandum at 1, it does not consider this argument for this Memorandum Opinion and Order's purposes. Second, Escudero raises the issue whether the PSR appropriately describes Escudero as an organizer, leader, manager, or supervisor of the underlying criminal activity under U.S.S.G. § 3B1.1(c). <u>See</u> Objections at 13-14. The USPO agrees with Escudero's position that Escudero does not satisfy these criteria and omits the enhancement from the Revised PSR. <u>See</u> Memorandum at 1. Accordingly, the Court does not rule on this Objection.

enhancements related to that conduct.  Accordingly, with a total offense level of 25 and a criminal history category of I, Escudero's Guideline imprisonment range is 57 to 71 months.

**FACTUAL BACKGROUND**

When considering an objection to a PSR, and when neither party challenges the sufficiency of the PSR's factual allegations, the Court can accept the PSR's factual allegations as true.  See Fed. R. Crim. P. 32(i)(3)(A).  Where the parties dispute any portion of the PSR's factual allegations, the Court "must . . . rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing . . . ."  Fed. R. Crim. P. 32(i)(3)(B).  Although Escudero objects to the PSR's interpretation of the facts in applying certain enhancement -- namely whether the facts demonstrate that Escudero was a leader of criminal activity and whether the PSR is overbroad in selecting facts as part of Escudero's relevant conduct -- he does not object to the PSR's factual allegations.[3]

On November 11, 2017, Escudero purchased a Radical Firearms RF-15 Multi Caliber Rifle bearing serial number RD12494 from Valley Pawn in Albuquerque, New Mexico.  See PSR ¶ 15, at 6.  Between February 12, 2019, and November 17, 2020, Escudero purchased six firearms from BMC Tactical and JCT Firearms, two firearms stores in Albuquerque: (i) a Glock 45 bearing serial number BKDW959 from JCT Firearms on February 12, 2019; (ii) a Glock 19X bearing serial number ADRE544 from JCT Firearms on December 27, 2019; (iii) a PAC-9 bearing serial number

---

[3]The factual allegations in the PSR are identical to those in the Revised PSR with the exception of ¶ 29, at 9.  In the PSR, ¶ 29 states: "It should be noted that the factory standard magazine for the Glock 17, 19x, and 45 handguns have a capacity of 17 rounds, qualifying as a high-capacity magazine according to federal statute."  PSR ¶ 29, at 9.  The Revised PSR omits this language in ¶ 29, although it retains similar language in ¶¶ 8 and 10.  See Revised PSR ¶¶ 8, 10, at 4-5; id. ¶ 29, at 9.  Because Escudero Objects to the original PSR, the Court uses the original PSR's facts for this Memorandum Opinion and Order's purposes.

RONVMB71813023 from JCT Firearms on December 27, 2019; (iv) a F&N America 509e bearing serial number GK011935 from BMC Tactical on August 14, 2020; (v) a Glock 17 bearing serial number BRDD633 from BMC Tactical on October 24, 2020; and (vi) an FN USA Five Seven 5.7x28 bearing serial number 386396801 from JCT Firearms on November 17, 2020.  See PSR ¶ 7, at 4; id. ¶ 9, at 4-5.  The Glock 17, Glock 45, and Glock 19x have a standard capacity of seventeen rounds.  See PSR ¶ 8, at 4; id. ¶ 10, at 5.  In all six purchases, Escudero indicated that he was not a drug user and signed a certification statement.  See PSR ¶ 7, at 4; id. ¶ 9, at 4-5.  In four of the purchases -- the Glock 45, the F&N America 509e, the Glock 17, and the FN USA Five Seven -- Escudero indicated that he was the actual buyer or transferee of the firearms.  See PSR ¶ 7, at 4; id. ¶ 9, at 4-5.  In the remaining two purchases -- the Glock 19X and the PAC-9 -- he did not make this indication.  See PSR ¶ 7, at 4; id. ¶ 9, at 4-5.

On December 7, 2020, Escudero received a telephone call from an acquaintance named Anthony or Angelo, and to whom the PSR refers as A.Q.  See PSR ¶ 19, at 6.  A.Q. indicated that he has taken guns from his workplace, FedEx, and requested to meet Escudero at a Walmart parking lot in southwest Albuquerque.  See PSR ¶ 19, at 6-7.  A.Q. one or two of A.Q.'s coworkers would scan certain shipments, identify the shipments' contents, and steal the contents if they identified them to be firearms.  See PSR ¶ 25, at 8; id. ¶ 19, at 7.  At the Walmart, A.Q. showed Escudero six firearms and asked if Escudero could help "get rid of them."  PSR ¶ 25, at 8.  See id. ¶ 19, at 6-7; id. ¶ 26, at 8.  Escudero indicated that he knew a buyer and took custody of the firearms.  See PSR ¶ 19, at 7.

The same day, Escudero sold the guns to Jakob Cervantes, a friend whom Escudero had known since high school.  See PSR ¶ 19, at 7; id. ¶ 13, at 5.  Cervantes was part of the 1300 Block Gang, but Escudero was not associate with the gang.  See PSR ¶ 24, at 8.  Escudero was aware

that Cervantes had a history of violence, including having been involved previously in shootings. See PSR ¶ 24, at 8.  Escudero knew that Cervantes would be interested in purchasing the firearms, because Escudero had seen Cervantes post on Snapchat that he would "cash you out on any price." PSR ¶ 25, at 8.

Cervantes paid $2,400.00 for the firearms and gave Escudero an additional $300.00 and "a couple ounces of marijuana" for facilitating the sale.  PSR ¶ 17, at 6.  See id. ¶ 19, at 7.  Escudero then gave A.Q. the money that Cervantes had paid for the firearms that night.  See PSR ¶ 19, at 7. One or two days later, A.Q. sold Escudero a seventh stolen firearm, which Escudero transferred to Cervantes.  See PSR ¶ 26, at 8.  Escudero accompanied Cervantes to sell the first six firearms to an unknown white male, whom Cervantes indicated would take them to California.  See PSR ¶ 26, at 8.  Cervantes sold the seventh firearm to an unknown male, whom Cervantes indicated would take it to Texas.  See PSR ¶ 26, at 8.  Around this time, Escudero asked Cervantes to return the firearms, but Cervantes indicated that the guns were on their way to California and Texas, and that he could not get them back.  See PSR ¶ 19, at 7.  Escudero believed that Cervantes knew the firearms were stolen when he purchased them.  See PSR ¶ 19, at 7.

Between January 25, 2021, and January 26, 2021, special Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") agents and Homeland Security Investigations ("HSI") agents became aware of three firearms with short time-to-crime timeframes, which Escudero had purchased.  See PSR ¶ 6, at 4.  On February 4, 2021, the ATF and HIS agents interviewed Escudero as his workplace.  See PSR ¶ 11, at 5.  During the interview, Escudero admitted that he bought five firearms on Cervantes' behalf: (i) the Glock 45; (ii) the Glock 19X; (iii) the F&N America 509e; (iv) the Glock 17; and (v) the FN USA Five Seven.  See PSR ¶ 11, at 5.  Cervantes gave Escudero between $100.00 and $200.00 in exchange for each purchase.  See PSR ¶ 12, at 5.

- 4 -

Escudero also indicated that he sold the Radical Firearms RF-15 rifle for $600.00 to someone named "Chris," although he later admitted that he purchased the firearm for himself and then sold it to Cervantes.  PSR ¶ 16, at 6.

During the interview, Escudero indicated that, as he and Cervantes became close, Cervantes began asking Escudero to purchase firearms, because Escudero's name was "clean," and because Cervantes would not be able to pass the comprehensive background check for a firearm purchase.  PSR ¶ 14, at 6.  To initiate a sale, Cervantes would ask Escudero to "pull [him] out a gun," and Escudero would purchase a firearm and give it to Cervantes.  PSR ¶ 14, at 6. Escudero also indicated that he purchased marijuana from and sold marijuana for Cervantes.  See PSR ¶ 13, at 5.  When selling out of his vehicle, he would carry a .380 pistol, a PAC-9 semi-automatic pistol, or a Glock 19X for protection.

The ATF and HSI agents interviewed Escudero a second time on February 9, 2021.  See PSR ¶ 18, at 6.  Sometime before this interview, Escudero wrote a letter to Cervantes and sent him approximately $1,500.00 in cash which Escudero owed to Cervantes.  See PSR ¶ 27, at 8.  In the letter, Escudero told Cervantes, "It's hot.  They are looking into me for those stolen guns.  Here is your money that I owe you.  I'm done with this life."  PSR ¶ 27, at 8.  Cervantes then cut contact with Escudero.  See PSR ¶ 27, at 8.

Several of the firearms which Escudero purchased have appeared in the ATF's Electronic Tracing System ("eTrace").[4]  See PSR ¶¶ 21-22, at 7.  On February 19, 2021, ATF agents reviewed an eTrace summary concerning a Glock 19X bearing serial number ADRE544, which officers

---

[4]According to the PSR, "eTrace summaries are documents that establish a 'buy to crime' timeline and include where the firearm was bought, who bought the firearm, when the firearm was used in a crime, and which law enforcement agency confiscated the firearm."  PSR ¶ 21, at 7.

from the Albuquerque Police Department ("APD") recovered during an investigation on February 10, 2021.  See PSR ¶ 21, at 7.  The eTrace summary indicated that the Glock 19X was the fourth firearm which Escudero purchased for Cervantes and which law enforcement operations recovered.  See PSR ¶ 21, at 7.  The other three recovered firearms include the Glock 17 bearing serial number BRDD633, the Radical Firearms RF-15 bearing serial number 12494, and the Glock 45 bearing serial number BKDW959.  See PSR ¶ 21, at 7.  The Glock 17 appeared in the eTrace summary, because APD officers arrested Cervantes with the firearm in his possession on November 25, 2020.  See PSR ¶ 22, at 7.  The ATF agents function-tested the Glock 17 and determined that it functioned as designed and qualified as a firearm.  See PSR ¶ 22, at 7.

## PROCEDURAL BACKGROUND

The United States Attorney charged Escudero in an Information, filed April 12, 2023 (Doc. 1), with a violation of 18 U.S.C. § 922(a)(6), making a false statement during the purchase of a firearm.  See Information at 1.  Specifically, the Information alleges that Escudero,

> in connection with the acquisition of a firearm, a Glock GMBH Model 17 GEN5 9mm pistol bearing serial number BRDD633, from BMC Tactical, a licensed dealer of firearms . . . , knowingly made a false and fictitious written statement to BMC Tactical, which statement was intended and likely to deceive BMC Tactical as to a fact material to the lawfulness of such sale of the said firearm to the defendant . . . , in that the defendant represented that he was the actual transferee and buyer of the said firearm and that he was not acquiring the firearm on behalf of another person, despite knowingly and intentionally acquiring the firearm on behalf of another person.

Information at 1.  The same day, Escudero entered into a Plea Agreement, filed April 12, 2023 (Doc. 4), pursuant to rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure.  See Plea Agreement ¶ 9, at 5; Fed. R. Crim. P. 11(c)(1)(B).

In the Plea Agreement, Escudero agrees "to plead guilty to Count 1 of the information charging a violation of 18 U.S.C. § 922(a)(6), that being Making a False Statement During the

Purchase of a Firearm." Plea Agreement ¶ 3, at 2.  In the Plea Agreement, Escudero makes several

factual admissions related to the charges against him.  See Plea Agreement ¶ 7, at 3-4.  First, he

admits that, in December, 2020, he received firearms that an employee stole them from FedEx,

that he provided the stolen firearms to Cervantes, and that he knew Cervantes was not permitted

to possess a firearm.  See Plea Agreement ¶ 7(a), at 4.  Second, he admits that, between February,

2019, and August, 2020, he purchased four[5] firearms for Cervantes from licensed firearms dealers,

that, with each purchase, he represented that he was the actual transferee or buyer for the firearms

when he was not, and that the actual transferee or buyer of the firearms was Cervantes.  See Plea

Agreement ¶ 7(b), at 4.  Third, he admits that, on October 24, 2020, he purchased a Glock GMBH

Model 17 GEN5 9mm pistol bearing serial number BRDD633 from BMC Tactical, a licensed

firearms dealer.  See Plea Agreement ¶ 7(c)-(d), at 4.  Fourth, he admits that, in connection with

that purchase, he signed an ATF Firearms Transaction Record form, which asked if he was the

actual transferee or buyer of the firearm and included a warning that read: "Warning: You are not

the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person.  If you

are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you."  Plea

Agreement ¶ 7(e), at 4.  Fifth, he admits that he falsely represented that he was the Glock 17's

actual transferee or buyer despite knowing that he was not the actual transferee or buyer and that

---

[5]The Plea Agreement's original text states that Escudero purchased five firearms for
Cervantes.  See Plea Agreement ¶ 7(b), at 4.  The parties, including Escudero, his defense counsel,
and the Assistant United States Attorney, have stricken that language and initialed next to a
handwritten note indicating that Escudero purchased four firearms for Cervantes.  See Plea
Agreement ¶ 7(b), at 4.  Because the PSR explains in detail which five firearms Escudero sold to
Cervantes and explains that Escudero admitted to the ATF agents that he purchased those five
firearms for Cervantes, see PSR ¶ 11, at 5, and because the parties have not objected to the PSR's
conclusion that Escudero sold those five firearms to Cervantes, the Court concludes, for sentencing
purposes and as the Factual Section above reflects, that Escudero sold the five firearms which the
PSR lists, and not four firearms only, to Cervantes.

Cervantes was the actual transferee or buyer.  See Plea Agreement ¶ 7(f), at 5.  Sixth, he admits that, despite knowing that Cervantes was legally prohibited from purchasing the firearm, he "knowingly and intentionally both acquired the firearm on his behalf and concealed the truth about the actual transferee/buyer's identity from BMC Tactical."  Plea Agreement ¶ 7(g), at 5.  Finally, he admits that "the identity of the actual tranferee/buyer of the Glock Model 17 pistol was a fact that is material to the lawfulness of the sale of a firearm to [him]."  Plea Agreement ¶ 7(h), at 5.  As part of the Plea Agreement, Plaintiff United States of America agrees, pursuant to rule 11(c)(1)(B), to "recommend a sentence at the low-end of the advisory sentencing guidelines range, as determined by the Court at sentencing."  Plea Agreement ¶ 9(a), at 5.  Escudero also waives his right to appeal his conviction and the sentence imposed, among other rights.  See Plea Agreement ¶¶ 21-24, at 9-10.

The USPO filed the PSR on June 13, 2023.  See PSR at 1-20.  The PSR establishes the base offense level as 20 for a violation of 18 U.S.C. § 922(a)(6), under U.S.S.G. § 2K2.1(a)(4)(B).  See PSR ¶ 37, at 10.  The PSR then applies four special offense characterstics, enhancing the base offense level by: (i) 4-levels, because the offense involved 8 to 24 firearms, see PSR ¶ 38, at 10 (citing U.S.S.G. § 2K2.1(b)(1)(B)); (ii) 2-levels, because at least one of the firearms was stolen, see PSR ¶ 39, at 10 (citing U.S.S.G. § 2K2.1(b)(4)(A)); (iii) 4-levels, because Escudero engaged in firearms trafficking, see PSR ¶ 40, at 10 (citing U.S.S.G. § 2K2.1(b)(5)); and (iv) 4-levels, because Escudero "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense," PSR ¶ 41, at 10 (citing U.S.S.G. § 2K2.1(b)(6)).  The PSR applies a 2-level enhancement, because Escudero was an organizer, leader, manager, or supervisor in the criminal activity.  See PSR ¶ 43, at 10

(citing U.S.S.G. § 3B1.1(c)).  Finally, the PSR applied a 3-level reduction for Escudero's acceptance of responsibility.  <u>See</u> PSR ¶¶ 47-48, at 10.  Accordingly, the PSR calculates a total offense level of 33.  <u>See</u> PSR ¶ 49, at 10.  The PSR establishes that Escudero's criminal history score is 0, which establishes a criminal history category of I.  <u>See</u> PSR ¶ 53, at 11.  Accordingly, the PSR establishes a Guideline imprisonment range of 135 months to 168 months.  <u>See</u> PSR ¶ 77, at 16.  Because the statutory maximum term of imprisonment for this crime is 10 years, however, the PSR establishes a final Guideline term of imprisonment of 120 months.  <u>See</u> PSR ¶¶ 76-77 (citing 18 U.S.C. §§ 922(a)(6), 924(a)(2), U.S.S.G. § 5G1.1(a)).

Escudero filed his Objections on June 27, 2023.  <u>See</u> Objections at 1-14.  His first Objection is to the PSR's calculation of the base offense level pursuant to § 2K2.1(a)(4)(B).  <u>See</u> Objections at 3.  He contends that, because the Glock 17, 19x, and 45 handguns have a capacity of seventeen rounds, the Guidelines consider them to be capable of accepting high-capacity magazines and therefore increase the base offense level from 14 to 20.  <u>See</u> Objections at 3.  He argues that the base offense level is excessive here and that the "Court should reject the advice of the guidelines because it is a poor guide to a sufficient sentence for Mr. Escudero."  Objections at 3-4.  He argues that this adjustment to the base offense level is a holdover from the Violent Crime Control and Law Enforcement Act of 1994, which banned high-capacity magainzes, and that, since the act's expiry, federal law has become more permissive to high-capacity magazines, a change which the Guidelines do not reflect.  <u>See</u> Objections at 4-6.  He argues that the Guidelines' cut-off point for a high-capacity magazine is arbitrary and punishes ownership of magazines that are increasingly common in modern weapons.  <u>See</u> Objections at 7.  Escudero also argues that the guns which he purchased contained an unknown number of rounds and that the United States has not specified how many rounds the firearms which Escudero purchased could hold.  <u>See</u> Objections at 8.  He

asserts that the Court should not give the Guidelines' definition of large-capacity magazines controlling weight, and points out that the definition appears in the Guidelines' commentary, rather than in the Guidelines' substantive provisions. See Objections at 9-11. Accordingly, Escudero proposes a base offense level of 14. See Objections at 11.

Escudero's second Objection is to the PSR's application of special offense characteristics in ¶¶ 38, 39, and 40, for an offense which involved 8 to 24 firearms, an offense which involved a stolen firearm, and an offense which involved the defendant trafficking firearms. See Objections at 11-13; PSR ¶¶ 38-40, at 10. Escudero notes that, pursuant to the Plea Agreement, he admitted to purchasing four firearms from a firearms dealer for another individual, and that the United States Probation Officer ("USPO") applies these three enhancements in the PSR, because he considered as relevant conduct under U.S.S.G. § 1B1.3 Escudero's involvement in fencing the stolen firearms. See Objections at 11-12. He notes that § 1B1.3 defines relevant conduct to include "'all acts and omissions, comitted, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant,'" Objections at 12 (quoting U.S.S.G. § 1B1.3(a)(1)(A), and alternatively as

> "all acts and omissions of others that . . . occurred during the commission of the offense of conviction . . . if the acts were also:
>
> (i)    Within the scope of the jointly undertake [sic] criminal activity,
>
> (ii)    In furtherance of that criminal activity, and
>
> (iii)    Reasonably foreseeable in connection with the criminal activity . . . ."

Objections at 12 (quoting U.S.S.G. § 1B1.3(a)(1)(B))(ellipses in Objections but not in § 1B1.3). Escudero asserts that it appears that the second definition is at issue and that the PSR includes

- 10 -

improperly information regarding the A.Q.'s firearms sale to Escudero, because that act is "separate and independent" from Escudero's making a false statement on a form to a licensed firearms dealer.  Objections at 12.  He argues that "the scope of the agreement, furtherance, and reasonable foreseeability are 'independent and necessary elements of relevant conduct.'" Objections at 12 (quoting United States v. Willis, 476 F.3d 1121, 1129 (10th Cir. 2007). Accordingly, Escudero asserts that, "[w]hatever agreements were made between Mr. Escudero, Mr. Cervantes and A.Q. had nothing do to [sic] with Mr. Escudero's involvement in a straw purchase."  Objections at 13.

Escudero's third Objection is to the PSR's application of a 2-level enhancement based on Escudero's role as an organizer, leader, manager, or supervisor.  See Objections at 13-14.  He argues that the United States has not charged him with being part of a joint criminal enterprise or with conspiracy.  See Objections at 13.  He asserts that he never entered into a conspiracy with either Cervantes or A.Q., and that he did not play a substantial role in organizing any criminal activity.  See Objections at 13.  He asserts that, "[p]rior to receiving a call from A.Q., Mr. Escudero didn't know anything about the guns being taken by drivers from FedEx trucks.  He didn't negotiate the taking of the guns nor the price of the guns."  Objections at 13-14.  Instead, Escudero argues that "[h]e acted as a conduit for Mr. Cervantes and A.Q. and the request to help A.Q." Objections at 14.

The United States responded to Escudero's Objections on July 5, 2023.  See Government's Response to Defendant's Objections to the Presentence Report, filed July 5, 2023 (Doc. 12)("Response").  In response to Escudero's first Objection regarding the Guidelines' definition of a large capacity magazine, the United States acknowledges that,

> [w]hile it is likely that the defendant purchased the Glock 17 with the factory-standard magazine, rather than with an alternative magazine that would not be deemed large capacity under the guidelines, the United states lacks evidence as to what type of magazine was attached to or in close proximity to the firearm at the time the defendant purchased it or Cervantes.

Response at 3.  The United States notes that none of the discovery evidence, the ATF's eTrace summary, nor the firearms transaction record for the Glock 17 indicate what size magazine Escudero purchased, and that the USPO did not apply the enhancement in Cervantes' sentencing in connection with his conviction for possessing the same Glock 17.  See Response at 3; United States v. Cervantes, No. CR 21-0575 JB, Presentence Investigation Report, filed April 1, 2022 (Doc. 49).  Accordingly, "the United States concedes that it does not have sufficient evidence to meet its burden of demonstrating that the firearm at issue in this case was capable of accepting a large capacity magazine."  Objections at 3-4.

In response to Escudero's Objection regarding the leader or organizer enhancement, the United States notes that in Cervantes' case, the USPO did not consider him a leader or organizer. See Response at 4.  The United States notes that "Cervantes was paying for the firearms that Escudero purchased and was directing the purchases," and accordingly concedes that "there is not sufficient evidence to support finding that Escudero was a leader or organizer of Cervantes's enterprise, particularly where Cervantes, who was directing Escudero's actions, was not held to be a leader or organizer."  Response at 4.  On this basis, the United States agrees with Escudero that the leader or organizer enhancement under § 3B1.1(c) is inapplicable.  See Response at 4.

Finally, in response to Escudero's Objection that his fencing the stolen FedEx firearms is not relevant conduct, the United States argues that the Guidelines define relevant conduct broadly, and include "'all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the

offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.'"    Response at 5 (quoting U.S.S.G. § 1B1.3(a)(1)(A))(ellipsis in Response but not in § 1B1.3).   They argue that relevant conduct "'must relate to the offense of conviction.'"   Response at 5 (quoting United States v. Allen, 488 F.3d 1244, 1255 (10th Cir. 2007)).   The United States contends that it demonstrates such a relationship where "'there is a strong relationship between the uncharged conduct and the convicted offense, focusing on whether the government has demonstrated a significant similarity, regularity, and temporal proximity.'"   Response at 5 (quoting United States v. Allen, 488 F.3d at 1255).   The United States notes that Escudero helped Cervantes obtain firearms from February, 2019, and December, 2020, first by conducting straw purchases between February, 2019, and November, 2020, and then by fencing stolen firearms in December, 2020. See Response at 5.   The United States argues that Escudero construes his conduct too narrowly, and that "[t]he overarching goal of the defendant's conduct in both instances was to help Cervantes procure firearms, and the similarity between the transfers weighs in favor of including the conduct for purposes of calculating the defendant's sentencing guidelines."   Response at 5-6.   The United States reiterates that Escudero's final straw purchase took place on November 17, 2020, and that he sold Cervantes the stolen firearms on December 7, 2020, and states that "[i]n essence, between August and December 2020, the defendant secured firearms for Cervantes on four occasions, the last of which should not be excluded from his relevant conduct solely because the firearms came from a different source."   Response at 6.   Accordingly, the United States requests that the Court overrule Escudero's Objection.  See Response at 6.

        The USPO filed its Addendum on July 10, 2023.  See Addendum at 1-4.  In response to Escudero's Objection that the base offense level is irrationally high, the USPO states that it "has

revised the offense level to include a base offense level of 14 according to U.S.S.G. § 2K2.1(a)(6) and not 20 according to U.S.S.G. § 2K2.1(a)(4)(B)." Addendum at 2. Similarly, in response to Escudero's Objection regarding the organizer-or-leader enhancement, the USPO notes that it has removed this enhancement. See Addendum at 4. In response to Escudero's Objection regarding the USPO's consideration of relevant conduct, the USPO addresses the three contested enhancements in turn. First, regarding the 8-to-24-firearms enhancement, the USPO notes that Escudero admitted to selling Cervantes a total of thirteen firearms: seven from A.Q., four from licensed firearms dealers, and two from Escudero's personal collection. Second, regarding the stolen-firearm enhancement, the USPO asserts that it is unlikely that Escudero contacted Cervantes "randomly" to sell the stolen firearms, but rather contacted him, because Escudero and Cervantes had an ongoing relationship in which Cervantes would purchase firearms from Escudero. Third, regarding the firearms-trafficking enhancement, the USPO argues that Escudero's making straw purchases from licensed firearms dealers on Cervantes' behalf on its own constitutes firearms trafficking under § 2K2.1(b)(5), because he "represent[ed] to the dealers that he was the actual transferee/buyer of the firearms and then transferr[ed] possession of the firearms from the dealers to Mr. Cervantes, whom he knew was legally prohibited from obtaining or possessing firearms." Addendum at 3. Finally, the USPO argues that Escudero's fencing of A.Q.'s stolen guns is relevant conduct, "due to the strong relationship between the actual offense that Mr. Escudero is being charged with and the uncharged conduct." Addendum at 3. The USPO notes that Escudero sold the stolen firearms within two months from the last straw purchase which he made for Cervantes, for whom he had been purchasing firearms for over a year. See Addendum at 3. The USPO argues that the weapons' source is irrelevant, and that "[t]he relevant connection between the two is that Mr. Cervantes needed firearms for his own criminal activities and relied on Mr. Escudero to

purchase these firearms." Addendum at 3. Accordingly, the USPO maintains that these three enhancements are appropriate. See Addendum at 3. With the changes which the USPO makes to the PSR, it notes that the total offense level is 25, Escudero's criminal history category is I, and his sentencing range is 57 to 71 months. See Addendum at 4. On July 10, 2023, the USPO filed a Memorandum and the Revised PSR, reflecting these changes. See Memorandum at 1; Revised PSR ¶ 29, at 9; id. ¶ 37, at 10; id. ¶ 49, at 10; id. ¶ 77-78, at 16-17; id. ¶ 93, at 18-19.

## ANALYSIS

The Court considers Escudero's Objection regarding the USPO's determination of relevant conduct.[6] Section 1B1.3 directs courts, in determining the applicable Guideline range, to consider

(1)    (A)    all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured or willfully caused by the defendant; and

(B)    in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with

---

[6]Regarding Escudero's Objection to the base offense level, the Court construes this as a request for the Court to vary from the Guidelines out of a general disagreement with the Guidelines under Kimbrough v. United States, 552 U.S. 85 (2007)("Kimbrough"). The Court is permitted to vary from the Guidelines for no other reason than having policy disagreements with the Guidelines; these disagreements are known as Kimbrough disagreements. Kimbrough, 552 U.S. at 101. After United States v. Booker, 543 U.S. 220 (2005), the Guideline ranges are now advisory and are one of several factors set out in 18 U.S.C. § 3553(a). Before varying from the Guidelines, however, the Court first must calculate the Guideline range accurately. See Gall v. United States, 552 U.S. 38, 49 (2007)("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.")(citing Rita v. United States, 551 U.S. 338, 347-48 (2007)). Accordingly, for this Memorandum Opinion and Order's purposes, the Court does not consider Escudero's request for a variance here, but will consider the § 3553 factors in determining a final sentence at the hearing, currently set for July 13, 2023 at 10:00 a.m. See Notice of Sentencing, filed April 17, 2023 (Doc. 7)(text-only entry).

Additionally, to the extent that Escudero raises a factual Objection regarding whether he possessed a large capacity magazine, the USPO has filed the Revised PSR, which lowers the base offense level based on the United States' assertion that it does not have sufficient evidence to prove that Escudero possessed a large capacity magazine. See Revised PSR ¶ 37, at 10; Response at 3-4. The USPO similarly omits in the Revised PSR the leader-or-organizer enhancement to which Escudero objects. See Addendum at 4; Memorandum at 1. Accordingly, these two Objections are moot, and the Court will rule only on Escudero's scope-of-relevant-conduct Objection.

others, whether or not charged as a conspiracy), all acts and omissions of others that were --

    (i)     within the scope of the jointly undertaken criminal activity,

    (ii)    in furtherance of that criminal activity, and

    (iii)   reasonably foreseeable in connection with that criminal activity;

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2)    solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction

U.S.S.G. § 1B1.3(a)(1)-(2). The Court notes that § 1B1.3(a)(1)(B) does not apply here, because it applies to "all acts and omissions <u>of others</u>," and the PSR applies the enhancements based on Escudero's own acts, namely that he received stolen firearms from A.Q. and subsequently sold those firearms to Cervantes. U.S.S.G. § 1B1.3(a)(1)(B) (emphasis added). <u>See</u> Addendum at 3. Accordingly, the Court considers whether Escudero's conduct is relevant under § 1B1.3(a)(1)(A). Escudero has admitted to committing the additional act of fencing stolen firearms from A.Q. to Cervantes, <u>see</u> Plea Agreement ¶ 7(a), at 4, and so the Court examines whether he committed this act "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense," U.S.S.G. § 1B1.3(a)(1). Because Escudero sold the stolen firearms to Cervantes after having made the straw purchases over the course of the preceding year, and because there is no indication that he sold the stolen firearms to Cervantes in an attempt to avoid detection for having made straw purchases, the Court centers its analysis on whether Escudero committed the additional acts "during the commission of

the offense of conviction." U.S.S.G. § 1B1.3(a)(1).  The Court also notes that, if the United States

had charged Escudero with multiple counts of making false statements, or, for example, with a

violation of selling a stolen firearm under 18 U.S.C. § 922(j), the Guidelines would have grouped

these charges together for sentencing purposes under § 3D1.2(d), which directs the grouping of all

offenses that fall under § 2K2.1.  See U.S.S.G. § 3D1.2(d) (listing § 2K2.1 as an "[o]ffense[] . . . to

be grouped under this subsection"); U.S.S.G. App'x A (indicating that § 2K2.1 covers violations

of 18 U.S.C. §§922(a)-(p), among other statutes).  "Application of [subsection (a)(2)] does not

require the defendant, in fact, to have been convicted of multiple counts."  U.S.S.G. § 1B1.3 cmt.

5(A).  Accordingly, the Court additionally considers whether Escudero's sale of stolen firearms

was part of "the same course of conduct or common scheme or plan as the offense of conviction."

U.S.S.G. § 1B1.3(a)(2).

    The Court concludes that Escudero's sale of stolen firearms did not occur "during the

commission of the offense of conviction."  U.S.S.G. § 3B1.3(a)(1)(A).  The sole offense of

conviction here is for the October 24, 2020, false statement which Escudero made in purchasing

the Glock 17 on Cervantes' behalf.  See Information at 1; Plea Agreement ¶ 3, at 2.  A.Q. contacted

Escudero and Escudero sold the stolen firearms to Cervantes on December 7, 2020, approximately

one-and-a-half months later.  See PSR ¶ 19, at 7.  Accordingly, the Court does not conclude that

the sale of stolen firearms occurred during Escudero's making a false statement.  See United States

v. Flores, 149 F.3d 1272, 1281 (10th Cir. 1998)("Distinct offenses that did not occur

contemporaneously and do not represent essentially one composite harm cannot be said to have

occurred during the commission of one another.").  Accordingly, the sale of stolen firearms is not

relevant conduct under § 3B1.3(a)(1)(A).

The Court next examines whether Escudero's sale of stolen firearms was part of "the same course of conduct or common scheme or plan as the offense of conviction" under § 3B1.3(a)(2), because, as the Court notes above, had the United States charged Escudero for his additional false statements in the purchase of a firearm, or for his selling stolen firearms, these offenses would be grouped pursuant to § 3D1.2(d).    U.S.S.G. § 3B1.3(a)(2).    See U.S.S.G. § 3D1.2(d).    The Guidelines state that, "[f]or two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*."  U.S.S.G. § 1B1.3 cmt. 5(B)(i).  The Guidelines further state:

> Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses.  Factors that are appropriate to the determination as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.

U.S.S.G. § 1B1.3 cmt. 5(B)(ii).    The Tenth Circuit has explained that, "[a]lthough we have construed relevant conduct to cover a broad range of activities . . . we are mindful that '[o]ffenses of the same kind, but not encompassed in the same course of conduct or plan, are excluded.'" United States v. Damato, 672 F.3d 832, 840 (10th Cir. 2012)(first citing United States v. Garcia, 411 F.3d 1173, 1177 (10th Cir. 2005), and next quoting United States v. White, 888 F.2d 490, 500 (7th Cir.1989))(second alteration in United States v. Damato, but not in United States v. White).

The Court concludes that, although the sale of stolen firearms involves a distinct modus operandi from making false statements during the purchase of a firearm, the acts involve a common scheme or plan.    See U.S.S.G. § 1B1.3 cmt. 5(B)(i).    First, the offenses involve common accomplices, namely Cervantes, who purchased each of the firearms which Escudero purchased

from licensed firearms dealers, and who purchased the seven firearms which Escudero received from A.Q.  See PSR ¶ 11, at 5; id. ¶ 19, at 6-7.  Second, the offenses involve a common purpose, namely to provide firearms to Cervantes in exchange for payment.  See PSR ¶ 12, at 5; PSR ¶ 17, at 6.  Accordingly, the offenses are "substantially connected to each other by at least one common factor" listed in the commentary to § 1B1.3.  U.S.S.G. § 1B1.3 cmt. 5(B)(i).

Even if Escudero's offenses did not satisfy these common factors, the Court concludes that the offenses are related sufficiently in terms of similarity, regularity, and temporality to constitute the same course of conduct.  See U.S.S.G. § 1B1.3 cmt. 5(B)(ii).  Although making a false statement pursuant to a firearm purchase and selling stolen firearms are not identical offenses, they are both firearms offenses which § 2K1.2 encompasses.  See U.S.S.G. § 2K1.2.  Additionally, Escudero's purpose in engaging in these offenses was highly similar, that is, to provide firearms to Cervantes in exchange for payment.  See PSR ¶ 12, at 5; PSR ¶ 17, at 6.  Additionally, the Court notes that Escudero did not renounce this course of conduct until February, 2021, when ATF agents became aware of his activities and he wrote to Cervantes that he was "done with this life."  PSR ¶ 27, at 8.  In terms of regularity, although Escudero made his first two straw purchases over the course of a year in 2019, he made such sales regularly beginning August 14, 2020, and continuing on October 24, 2020, and again on November 17, 2020, see PSR ¶ 11, at 5, and his sale of stolen firearms occurred within those regular intervals, on December 7, 2020, see PSR ¶ 19, at 6-7.  Finally, Escudero's sale of stolen firearms is temporally close to both the offense of conviction and the last of Escudero's straw purchases.  Escudero's fencing of stolen firearms on December 7, 2020, occurred within two months of the straw purchase for which the United States charged Escudero's, namely the purchase of the Glock 17 on October 24, 2020.  See PSR ¶ 11, at 5; id. ¶ 19, at 6-7.  Moreover, the Escudero purchased the FN USA Five Seven on Cervantes' behalf on

November 17, 2020, approximately three weeks before the December 7, 2020, sale.  See PSR ¶ 11, at 5.  Accordingly, even if the Court does not conclude that Escudero's offense constitutes a common scheme or plan, it would conclude that Escudero's sale of stolen firearms was part of the same course of conduct as the straw purchases.  The Court overrules Escudero's Objection and concludes, therefore, that Escudero's sale of stolen firearms is relevant conduct under § 1B1.3(a)(2) for purposes of calculating an appropriate Guideline imprisonment range.

Having determined that Escudero's sale of stolen firearms is relevant conduct, the Court turns to Escudero's three Objections regarding enhancements for: (i) the number of firearms; (ii) whether any firearm was stolen; and (iii) whether Escudero engaged in firearms trafficking.  The Court overrules each objection.  First, § 2K2.1(b)(1)(B) provides a 4-level increase for an offense involving 8 to 24 firearms.  See U.S.S.G. § 2K2.1(b)(1)(B).  Escudero admits to selling Cervantes four firearms which he purchased using false statements, and admits additionally that he fenced the stolen firearms, of which there were seven firearms in total.  See Plea Agreement ¶¶ 7(a)-(b), at 4; PSR ¶ 19, at 6-7.  These sales result in a total of eleven firearms, within the 8 to 24 range that § 2K2.1(b)(1)(B) establishes.  Accordingly, the Court overrules this Objection and applies a 4-level enhancement for the number of firearms involved in the offense.

Second, § 2K2.1(b)(4)(A) provides for a 2-level enhancement when the offense involves a stolen firearm.  See U.S.S.G. § 2K2.1(b)(4)(A).  Escudero admits that he was aware that A.Q. had stolen the firearms that Escudero sold to Cervantes from FedEx.  See Plea Agreement ¶ 7(a), at 4; PSR ¶ 19, at 6-7.  Accordingly, the offense involved a stolen firearm, and the Court overrules Escudero's Objection and applies a 2-level enhancement.

Third, § 2K2.1(b)(5) provides for a 4-level increase if Escudero engaged in firearms trafficking.  See U.S.S.G. § 2K2.1(b)(5).  This enhancement applies when a defendant:

    (i)       transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and

    (ii)     knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual --

        (I)      whose possession or receipt of the firearm would be unlawful; or

        (II)     who intended to use or dispose of the firearm unlawfully.

U.S.S.G. § 2K2.1(b)(5) cmt. 13(A). An individual whose possession or receipt of a firearm would be unlawful is someone "who (i) has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or (ii) at the time of the offense was under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 2K2.1(b)(5) cmt. 13(B).

Here, the United States has established by a preponderance of the evidence that Escudero transferred firearms to Cervantes, and that Escudero knew or had reason to believe that Cervantes' possession of that firearm would be unlawful or that he intended to use the firearm unlawfully. Escudero admits that he sold several firearms to Cervantes, and that he knew that Cervantes "was prohibited from legally possessing a firearm." Plea Agreement ¶ 7(a), at 4. Escudero also indicated that he believed "Cervantes had some sort of domestic violence charge," and that Cervantes would not be able to pass the comprehensive background check required to purchase a firearm from a federal firearm licensee. PSR ¶ 13, at 5. See id. ¶ 14, at 6. Escudero also knew that Cervantes previously had been involved in multiple shootings and that Cervantes was involved in selling marijuana. See PSR ¶ 24, at 8; id. ¶ 13, at 5. These facts establish that Escudero knew or had reason to believe that Cervantes' possession of the firearm would be unlawful, or that Cervantes intended to use or dispose of the firearms unlawfully.

The Tenth Circuit also has explained that "'anyone receiving such firearms with any reasonable cause to believe the guns were stolen would be possessing the weapons illegally.'" United States v. Howard, 539 F. App'x 904, 908 (10th Cir. 2013)(quoting Appellee's Br. at 11).[7] In United States v. Howard, the Tenth Circuit upheld the firearms-trafficking enhancement's application where the defendant transferred stolen guns to his father-in-law -- as well as to a drug dealer and to a known felon -- because the father-in-law knew that the guns were stolen, and his possession of those stolen guns therefore was unlawful. See 539 F. App'x at 908. Thus, although Escudero's straw purchases on Cervantes' behalf are sufficient on their own to apply the firearms-trafficking enhancement, Cervantes knew that the firearms were stolen, as his asking Escudero whether "the guns were reported stolen" demonstrates. PSR ¶ 24, at 8. Cervantes' awareness that the guns were stolen, therefore, is sufficient evidence to demonstrate that Cervantes would be possessing them unlawfully once Escudero transferred them to him. See United States v. Howard, 539 F. App'x at 908. Accordingly, the Court overrules Escudero's Objection and applies the 4-level enhancement.

---

[7]United States v. Howard is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Howard has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

**IT IS ORDERED** that: (i) the Defendant's Objections to the Presentence Report, filed June 27, 2023 (Doc. 10)("Objections") are overruled in part and moot in part; (ii) Defendant Lorenzo Escudero's involvement in selling stolen firearms is relevant conduct to the offense of conviction under U.S.S.G. § 1B1.3(a)(2); (iii) the Court will apply a 4-level enhancement under U.S.S.G. § 2K2.1(b)(1)(B), because the offense involved 8 to 24 firearms; (iv) the Court will apply a 2-level enhancement under U.S.S.G. § 2K2.1(b)(4)(A), because at least one of the firearms was stolen; (v) the Court will apply a 4-level enhancement under U.S.S.G. § 2K2.1(b)(5), because Escudero engaged in firearms trafficking; (vi) the total offense level is 25; (vii) Escudero's criminal history category is I; and (viii) an offense level of 25 and a criminal history category of I establish a Guideline imprisonment range 57 to 71 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M. M. Uballez
  United States Attorney
Katherine L. Lewis
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Dennis J. Candelaria
  Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

    *Attorney for the Defendant*